**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JOSE A. TRINIDAD | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO.: 2:15CV323- WHA |
| | ) (WO) |
| DANIEL JOE MOORE, JR., and RDB | ) |
| TRUCKING, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This cause is before the court on the Defendants' Motion to Preclude the Testimony of Plaintiff's Expert Jon P. Dillard ("Dillard") (Doc. # 48). Plaintiff retained Dillard to testify as to whether Defendant Daniel Joe Moore's ("Moore's") conduct on the date of the accident fell below the standard of care in the tractor-trailer industry. In response, Defendants filed a Motion to preclude Dillard's testimony:

> with respect to [1] whether Moore was properly operating the subject tractor-trailer on the day of the accident; [2] whether RDB failed to properly train Moore; [3] whether Moore was a qualified driver at the time of the accident; and [4] whether RDB had a duty to conduct a post-accident review.

(Doc. # 48, p. 1). For reasons discussed below, Defendants' Motion to Preclude is due to be GRANTED in part and DENIED in part.

**II.   STANDARD OF REVIEW**

The admissibility of expert testimony is governed by the Federal Rules of Evidence, Rule 702 ("Rule 702"), which, as interpreted by the Supreme Court, "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993). This "gatekeeping" function is important "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation and citation omitted). Moreover, "[i]t is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practices of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

### III. DISCUSSION

Defendants argue that Dillard's proposed testimony is inadmissible expert testimony under Fed. R. Evid. 402, 403, and 702 for four reasons:

> First, Dillard's proposed opinions constitute inadmissible legal conclusions. Second, Dillard is not qualified by training, experience, knowledge or skill to render expert opinions as to the causation of the accident in question. Third, Dillard's opinions are not reliable because they are not based on sufficient facts or data, he does not utilize reliable principles and methods, and he does not apply any methods reliably. Finally, Dillard's proposed opinions are not relevant because they do not aid the trier of fact in reaching its decision and, in fact, they invade the province of the jury.

(Doc. # 48, pp. 1–2).

### A. *Expert Testimony*[1]

Defendants challenge the admissibility of Dillard's testimony under Fed. R. Evid. 702. In

---

[1] Defendants argue that Dillard's opinions amount to legal conclusions and that, even if they are not legal conclusions, Dillard has no bases to give an expert opinion according to *Daubert*. However, because any determination of the admissibility of the substance of an expert's opinion necessarily depends upon the bases for giving an expert opinion in the first place, the court will address whether Dillard may give an expert opinion under *Daubert* and *Kumho Tire*, first, and the substance of his opinions, second.

determining the admissibility of expert testimony under Rule 702, this court must conduct "a rigorous three-part inquiry," considering whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). This analysis applies to technical expert evidence, under *Kumho Tire*, the same as scientific expert evidence under *Daubert*.

*Qualifications*

The court finds that Dillard is qualified to testify as a safety consultant regarding the applicable standard of care for a commercial tractor-trailer driver. Under Rule 702, to qualify as an expert, a witness is required to possess the "knowledge, skill, experience, training or education" relevant to the evidence at issue. Fed. R. Evid. 702. His curriculum vitae and deposition testimony show that Dillard is qualified because he has been formally trained and gained extensive knowledge and familiarity with the safe practices applicable to commercial motor vehicles. Furthermore, Dillard has experience in the development and implementation of effective safety management controls. Accordingly, Dillard is qualified to testify as a technical expert concerning the safety standards of the tractor-trailer industry because of his extensive education, training, and experience. *See generally Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343 (11th Cir. 2003) (finding expert witness qualified to testify under Rule 702 because of his "extensive education, training and experience"). He is not an accident reconstruction expert and is not tendered as such.

The court rejects Defendants' argument that Dillard is not qualified because he "does not have a [commercial driver's license]" and "has never attended driving school," "worked as a tractor-trailer driver," or "driven a tractor-trailer on the open road." (Doc. # 63, p. 4, n. 1.) Defendants' argument rests on the assumption that Dillard cannot opine about general tractor-trailer safety standards, because he has never been employed as a tractor-trailer driver. (Doc. # 63, p. 4). That is not the case. It would be akin to saying a football coach cannot give an opinion about a quarterback because he has never played the position. "Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796. "[T]his relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Id.*

### *Methodology – Reliability*

Next, Dillard's methodology is sufficiently reliable. Defendants argue lack of reliability on the basis of the analysis used to judge reliability of scientific expert testimony. However, standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). For nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152. "A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.' " *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F. 3d 1331, 1338 (11th Cir. 2009) (citing *Kumho Tire Co.*, 526 U.S. at 151).

Here, Dillard's testimony is sufficiently reliable because it is based upon personal

knowledge or experience. Dillard has years of experience training drivers on proper operation of commercial vehicles and companies on proper management of commercial drivers, and he will be allowed to testify as a technical expert to the extent that his testimony is based on that. Accordingly, Dillard's testimony survives the required methodology prong to testify as to whether Moore was properly operating his vehicle on the day of the accident.

Defendants also dispute Dillard's reliability on the basis that it is based on insufficient facts or data or a wrong understanding of the facts, because he has accepted Trinidad's version of the accident, which even the Plaintiff's expert does not accept. This objection would apply to Opinion 4, and Dillard will not be allowed to give that opinion as written. However, Dillard may base an opinion on disputed facts. *See Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258 (S.D. Fla. 2012). In *Feliciano*, the court, relying on *Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002), reasoned that an expert is permitted to base his opinion on a particular version of the disputed facts and the weight to be accorded to that opinion is for the jury.

He may not give an opinion as to which version of the accident is true, since he is not qualified to testify as an accident reconstructionist, but he may opine as to whether different versions would indicate a failure by Moore to conform to standards and practices for drivers of tractor-trailers in the industry. How the accident happened is for the jury.

*Assist the Trier of Fact*

There is, however, an issue which pertains to whether Dillard's opinions are helpful to the jury. As *Daubert* explained, "[t]his condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citations and quotations omitted). Defendants specifically challenge two of Dillard's opinions regarding the negligent entrustment claim as being irrelevant. The court will address each

in turn.

First, Defendants argue that Dillard's Opinion 7 is not helpful to the jury. Opinion 7 states:

> There is no evidence in this case that RDB conducted any post accident investigation to determine root cause analysis and implement disciplinary and/or corrective actions. In the trucking industry safe operating practices can be achieved when the motor carrier management and supervisory force has assumed full responsibility for safety under the pretense that safety is good business. A motor carrier has no greater public responsibility than to conduct its business in a safe manner. To this end, safety awareness, safety accountability and safety in operation are qualities which must be possessed by the employing motor carrier. A successful motor carrier integrates safety into all aspects of the business, from screening, hiring, training, retaining, supervising, and reviewing its drivers all the way through the procedures and performance of the driving task. As such, RDB breached its duty and responsibility for not establishing an accident review committee to investigate and determine the [sic] how this accident could have been prevented. If RDB had conducted a reasonable investigation and review of the accident it would have revealed Mr. Moore's failure to exercise basic defensive driving techniques.

(Doc. # 48-1, p. 18).

Defendants note that this opinion does not make the existence of any fact of consequence to the determination of the action more or less probable and is irrelevant. The court agrees. It does not appear that RDB's actions after the accident could have contributed in any way to the accident itself. Moreover, because the Plaintiff failed to respond to Defendants' argument on this point, the argument is not refuted. Therefore, the court finds that such testimony is irrelevant and will not be allowed.

Defendants also object to "Opinion 2." Opinion 2 states:

> RDB failed to ensure that Mr. Moore was qualified to operate a commercial motor vehicle according to federal and state adopted regulations. According to federal regulations, a person must not operate a commercial motor vehicle unless he or she is medically certified as physically qualified to do so. There is no documented

>evidence that Mr. Moore was medically qualified to operate a commercial motor vehicle at the time of this accident.

(Doc. # 48-1, p. 17). Defendants attack this opinion on the basis that there is no evidence that Moore's medical condition, even if RDB did not screen for it, was a factor in the wreck. The Defendants also argue that there is no evidence that Moore's physical condition contributed to the wreck in any way. The court agrees. Dillard's opinion is not relevant to Moore's negligence or to RDB's entrustment claims and will not be allowed.

The court notes that Defendants' other *Daubert* objections are not directed to qualifications, reliability, or relevance. Defendants argue that Dillard has been excluded from giving expert testimony by two other district courts in Alabama, citing *Nicholson v. McCabe*, No. CV-02-H-1107-S, 2003 WL 25676474, at *1 (N.D. Ala. June 2, 2003) and *Moon v. Werner*, No. 1:04cv950-F, 2005 WL 5981338 (M.D. Ala. Sept. 1, 2005). In *Nicholson*, Dillard's proposed testimony was excluded, not because he was unqualified to testify as an expert under *Daubert*, but rather, because he was going to offer only one opinion and that was an improper legal conclusion that the defendant driver violated the Federal Motor Carrier Safety Regulations.[2] Further, in *Moon*, the only other court excluding Dillard did so, not because it found him unqualified to render opinions as to the standard of care, as defendants represent in brief, but because the plaintiff failed to respond to the Defendants' Motion to Exclude and counsel advised the court that they would not call Dillard to testify at trial.

### B. Legal Conclusions

---

[2] In that court's Order denying a motion to reconsider exclusion of Dillard as an expert, the court noted that testimony regarding industry customs would be admissible "as bearing on the standard of care in determining negligence," but that Dillard had not been tendered as an expert on customs and practices, but only as to violations of federal and state regulations. *Nicholson v. McCabe*, 2003 WL 25676476. Such is not the case here.

Next, Defendants argue that some of Dillard's opinions are inadmissible legal conclusions. While expert witnesses may draw inferences from the facts of a case, they may not draw legal conclusions from those facts. *See Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("A witness . . . may not testify to the legal implications of conduct"); *see also Dialysis Clinic, Inc. v. Bay Line R.R., LLC*, No. 1:10-CV-1051-WKW, 2012 WL 5467523, at *3 (M.D. Ala. Nov. 9, 2012) (finding expert's opinion that "Chattahoochee Bay Railroad was in full compliance with all applicable Federal Railroad Administration Regulations" prior to the flood inadmissible as stating a legal conclusion). Doing so would "contravene[] the well-established principle that an expert may not testify as to a legal conclusion." *Nicholson*, 2003 WL 25676474, at *1 (finding an expert's opinion that a defendant violated a federal regulation to be an inadmissible legal conclusion).

To understand where admissible expert opinion in the form of a factual inference crosses the line to inadmissible legal conclusion, courts look to see if the jury is capable of drawing the conclusion itself or if technical assistance is needed. *See City of Tuscaloosa v. Harcros Chemicals, Inc.*, 877 F. Supp. 1504, 1516 (N.D. Ala. 1995), *aff'd in part, vacated in part, rev'd in part*, 158 F.3d 548 (11th Cir. 1998). In *Harcros Chemicals*, an expert statistician purported to use statistics to uncover collusive behavior. *Id.* The statistician's report stated the following:

> Conspirators honored one another's incumbencies with great regularity throughout that period, and used price signals when bidding into non-incumbencies to communicate proposed moves to new and higher price levels. In fact, analysis of available data throughout the Southeastern market indicates that signs of noncompetitive behavior were prevalent throughout the market during that period, with exceptions only where Allied was an active bidder, or a threat to bid. The result was that public entities throughout the southeastern market in general, and in the Alabama submarket in particular, paid significantly higher prices for liquid chlorine than they would have paid in a competitive market

environment.

*Id.* at 1516. The district court, and ultimately the Eleventh Circuit, found this proposed testimony inadmissible because "[h]is characterizations of documentary evidence as reflective of collusion, and his characterizations of particular bids as 'signals' . . . [did not] assist the trier of fact, through the application of scientific, technical, or specialized expertise." *Harcros Chemicals*, 158 F.3d at 564–65. Instead, the court noted, "the trier of fact is entirely capable of determining whether or not to draw such [legal] conclusions without any technical assistance from [the expert]." *Id.* at 565. Accordingly, the expert's opinions were inadmissible because the jury was capable of drawing the legal conclusion without technical assistance.

In addition, expert witnesses may not testify that a party violated a federal regulation. *See Nicholson*, 2003 WL 25676474, at *1.

However, an expert witness may rely upon federal regulations as a basis for opining on the standard of care in a particular industry. *See See Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 2832192, at *3 (M.D. Ala. June 23, 2014). In *Lohr*, plaintiff proffered a trucking safety and management expert to opine that defendant's conduct fell below the standard of care in the trucking industry. In his opinion, the expert discussed the Federal Motor Carrier Safety Regulations. The defendant moved to exclude the expert's opinion, arguing it amounted to a legal conclusion. The court agreed that the witness could not interpret regulations, but denied the defendant's motion, noting "[t]here is no per se bar on expert testimony about regulations in the Eleventh Circuit." *Id.* The court continued, "Alabama law does not recognize a negligence-per-se cause of action based on the Federal Motor Carrier Safety Regulations, but such regulations may be considered by a jury to determine whether a defendant exercised appropriate care for the situation. Furthermore, common sense suggests that trucking industry practices around safety are

9

heavily influenced by the regulations on the industry." *Id.* (internal citations omitted). The court allowed the witness to give opinions as to whether the defendant "failed to exercise the appropriate degree of care consistent with industry customs and practices." *Id.*

In this case, Defendants object to Dillard's expert report claiming his opinions amount to impermissible legal conclusions. Only three of Dillard's opinions are problematic in this regard, however: Opinion 2,[3] a portion of Dillard's opinion within Opinion 3, Dillard's conclusion in Opinion 5, and a portion of Dillard's opinion within Opinion 6.

Opinion 2 is problematic because it refers to failure to comply with regulations. So, in addition to being inadmissible as irrelevant, as previously ruled, Opinion 2 is inadmissible on this basis.

Opinion 3 is problematic, in part, because it suggests a violation of law. Like the *Nicholson* opinion, this opinion directly suggests that the defendant violated FMCSRs.[4] Furthermore, it accepts the truth of a version of disputed accounts of how the accident happened.

Likewise, Dillard's conclusion in Opinion 5 that "[a]s the authorized motor carrier, DRB failed to properly train Mr. Moore regarding applicable accident prevention guidelines," refers to guidelines from an unidentified source and draws the conclusion that they were violated because he has seen no evidence that RDB gave such training. He does not identify any requirement or industry standard for a trucking company to independently train a properly licensed commercial truck driver. It is inadmissible.

Finally, Dillard's Opinion 6 that "[t]his accident would be classified as a preventable accident," which he explained in his deposition referred to a definition of the National Safety

---

[3] This is the same opinion Defendants object to as not being helpful to the jury.
[4] As noted earlier, the expert in *Nicholson* was not proffered to testify on the standard of care in the trucking industry.

Council, is inadmissible as stating a legal conclusion.

### IV.   CONCLUSION

Expert testimony is particularly useful in this case to help the jury understand the standard of care for the tractor-trailer industry. Moreover, because any determination about what an ordinary tractor-trailer driver would do under certain circumstances to conform to those standards depends upon the factual circumstances involved, it is important to allow experts, such as Dillard, to apply their experience in the particular industry to different factual scenarios and opine as to whether those scenarios would deviate from that standard of care.

Dillard may opine as to whether Moore's behavior fell below the standard of care for the commercial trucking industry under various sets of hypothetical facts, *see Muncie Aviation Corp.*, 519 F.2d at1180 (noting "[c]ompliance or noncompliance with such custom, though not conclusive on the issue of negligence, is one of the factors the trier of fact may consider in applying the standard of care"), but may not opine as to how the accident happened, since that is in dispute. He may not accept as true any one of those versions, as he is not an accident reconstructionist. Also, he may refer to the Federal Motor Carrier Safety Regulations and the role they play in developing safety standards in the commercial trucking industry, but he may not testify that rules and regulations were violated.

For the reasons discussed, it is hereby ORDERED as follows:

The Defendants' *Daubert* Motion to Preclude the Testimony of Plaintiff's Expert Jon P. Dillard ("Dillard") (Doc. # 48) is GRANTED in part and DENIED in part as set out above.

Done this 20th day of September, 2016.

                                            /s/ W. Harold Albritton  
                                            W. HAROLD ALBRITTON  
                                            SENIOR UNITED STATES DISTRICT JUDGE