**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JOSE A. TRINIDAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No.  2:15cv323-WHA |
| | ) |
| DANIEL JOE MOORE, JR., and | )      (wo) |
| RDB TRUCKING, LLC, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

This cause is before the court on a Motion to Preclude Testimony of Plaintiff's Expert Sasha R. Iversen, D.O. (Doc. #47),  a Motion in Limine Excluding Undisclosed Opinions of Dr. Victoria Do (Doc. #101), and a Motion in Limine Excluding Undisclosed Opinions of Dr. Nilesh Kotecha (Doc. #99).

Dr. Iverson is offered as an expert who provided a life care plan in this case. Dr. Do is a treating physician of the Plaintiff.  Dr. Kotecha is also a treating physician of the Plaintiff.

The Defendants have moved to exclude testimony from the two treating physicians on the basis that the Plaintiff seeks to have them offer expert opinions without having made the proper disclosures under Fed. R. Civ. Pro. 26.  As to Dr. Kotecha, the Defendants argue that the Plaintiff's counsel indicated at the pre-trial conference in this case that the doctor will testify as to causation, but Dr. Kotecha was not disclosed as an expert, but merely listed as a witness. As to

Dr. Do, the Defendants' objection to her testimony was triggered by statements made by counsel for the Plaintiff at the pretrial conference held in this case that Dr. Do would provide testimony relevant to the Life Care Plan. The Defendants contend that Dr. Do should not be allowed to affirm the Life Care Plan of Dr. Iversen or testify as to future treatment because Dr. Do was never identified as an expert regarding the Plaintiff's long-term future care or treatment.

As to Dr. Iversen's testimony, the Defendants move for exclusion based on Fed. R. Evid. 702.

The court will begin with the Motions in Limine as to the testimony of Dr. Do and Dr. Kotecha, and then address the Motion in Limine as to Dr. Iversen's testimony.

## II.   STANDARDS OF REVIEW

### A.  Rule 26 Disclosures

Rule 26(a) of the Federal Rules of Civil Procedure provides as follows:

> **(2)** *Disclosure of Expert Testimony*.
> **(A)** *In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> **(B)** *Witnesses Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.
> * * *
> **(C)** *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> **(i)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> **(ii)** a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26.  Where a party fails to provide information as required under Rule 26(a), Rule 37 authorizes the court to sanction that party, including exclusion of evidence from trial. See Fed. R. Civ. P. 37(c).

Section 8 of the Uniform Scheduling Order entered in this case on July 28, 2015 set deadlines (later extended) for disclosure of "any person who may be used at trial to present evidence under Rules 701, 702, 703, or 705 . . . ." and further provided that "The parties shall comply fully with all requirements of Rule 26(a)(2) in regard to disclosure of expert testimony."

B.  Rule 702

The admissibility of expert testimony is governed by Fed. R. of Evid. 702 which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702, as interpreted by the Supreme Court, "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).  This "gatekeeping" function is important "to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation expert testimony." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (quotation and citation omitted).

### III. DISCUSSION

#### A. Motion To Exclude Based on a Failure to Make Rule 26 Disclosures

As set out above, there are two different disclosure requirements under Rule 26 which can apply to expert testimony. Rule 26(a)(2)(B) governs when a witness is one who is specially retained to provide expert testimony and must provide a written report. Rule 26(a)(2)(C) applies when a witness does not have to provide a written report. Under Fed. R. Civ. Pro. 26(a)(2)(C), if a witness is not one who has to provide a written report, but the witness will present evidence under Rule 702, 703, or 705, then the subject matter on which the witness is expected to present evidence under Rules 702, 703, or 705, and a summary of the facts and opinions to which the witness is expected to testify must be disclosed. These rules became effective in 2010. Fed. R. Civ. Pro. 26(a)(2); *Kondragunta v. Ace Doran Hauling & Rigging Co.*, No. 1:11cv1094, 2013 WL 1189493, at *3 (N.D. Ga. March 21, 2013).

The notes to the Rules, 2010 Amendment, state that under Rule 26(a)(2)(C), a witness may "both testify as a fact witness and also provide expert testimony" and that "[f]requent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." This statement indicates that Rule 26(a)(2)(C) disclosure requirements apply to treating physicians. In fact, one court has summarized the operation of the two disclosure rules as follows: "[a]n expert report is required to be provided if the expert is retained and specially employed to provide testimony in a case, and it is true this requirement does not apply to Plaintiff's treating physicians," but Rule 26(a)(2)(C) "has a specific requirement for disclosures regarding treating physicians . . ." *Davis v. Green*, No. 1:12cv3549-WSD, 2015 WL 3505665, *4 (N.D. Ga. June 3, 2015).

4

**1. Dr. Kotecha**

The Defendants have moved in limine to exclude undisclosed opinions of Dr. Kotecha, a treating physician. Specifically, the Defendants state that at the pretrial conference in this case, Plaintiff's counsel indicated that Dr. Kotecha may testify regarding causation, but Dr. Kotecha was not disclosed as an expert witnesss.

Dr. Kotecha is listed on the Plaintiff's witness list as a "may call" witness, and has been identified in the briefing on the Motion in Limine as a treating physician. Dr. Kotecha is not listed on the Plaintiff's Amended Designation of Expert Witnesses. (Doc. #55-4). The Plaintiff states that Dr. Kotecha was disclosed to the Defendants as a treating physician on March 14, 2016. Although the Plaintiff cites the court to the Plaintiff's First Supplemental Disclosures, that document was not filed with the court, and is not attached to the Plaintiff's response, so the court cannot review the scope of the disclosure. (Doc. #124 at p.6). The Plaintiff does not appear to contend, however, that he complied with any Rule 26 disclosure requirements, other than to identify Dr. Kotecha by name as a treating physician.

The issue before this court, therefore, is whether testimony as to causation by Dr. Kotecha, a treating physician, falls within Rule 26(a)(2)(C). The Eleventh Circuit has explained that "the testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court." *Williams v. Mast Biosurgery USA, Inc*., 644 F.3d 1312 (11th Cir. 2011). In *Williams*, the court relied on decisions from other circuits which reasoned that a treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party, but when a "treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony." *Id.* at 1317-18.

Another district court, in an opinion relied upon by the Plaintiff, similarly has reasoned that a physician who is not qualified as an expert may not provide explanations of scientific and technical information unless it is grounded in the physician's own observations and technical experience. *Eberhart v. Novartis Pharmaceuticals Corp*., 867 F. Supp. 2d 1241 (N.D. Ga. 2011). The court further pointed out that when causation is not necessary to provide medical treatment and is based on a hypothesis, it is expert testimony. *Id.* at 1252.

Specifically with regard to causation testimony by treating physicians, courts addressing the issue after 2010 have concluded that where a plaintiff offers a treating physician's testimony as to causation, the offering party is required to comply with Rule 26(a)(2)(C)). *See, e.g., Davis v. Green*, No. 1:12cv3549-WSD, 2015 WL 3505665, at *3-4 (June 3, 2015); *Kondragunta*, 2013 WL 1189493, at *6.

The Plaintiff in this case has cited the court to cases to support his argument that testimony as to causation is within the purview of a treating physician and does not require disclosure under Rule 26(a).  The cases cited by the Plaintiff, however, examine the scope of the reporting requirement in Rule 26(a)(2)(B), not Rule 26(a)(2)(C), or were decided under the previous version of the Rule. *See Cobble v. Wal-Mart Stores E*., No. 1:10cv10, 2010 WL 1088513, at *3 (N.D. Ind. March 19, 2010) and *Odum v. Rayonier, Inc*., No. Civ. A. CV204-190, 2007 WL 2002445, at *3 (S.D. Ga. July 5, 2007).[1]

---

[1] One of the decisions relied on by the Plaintiff, *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011), although decided after 2010, only addressed Rule 26(a)(2)(B), and concluded that "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment."

This court is persuaded that when a treating physician offers an opinion as to causation, unless that opinion was formed and given as part of treatment, that testimony is expert testimony by the treating physician and triggers the requirements of Rule 26(a)(2)(C). In this case, the court has not been provided the substance of the testimony from Dr. Kotecha, so the Plaintiff has not shown that any opinion as to causation was made for the purpose of treatment of the Plaintiff. The Plaintiff should have, but failed to, comply with the requirements of Rule 26(a)(2)(C) and the requirements set out in the Uniform Scheduling Order.

A failure to make the appropriate disclosures under Rule 26(a)(2)(C) precludes a party from introducing the testimony at trial unless the failure to comply was substantially justified or harmless. *See* Fed. R. Civ. Proc. 37(c)(1). Courts generally apply a multi-factor test in applying this rule. *See Kondragunta*, 2013 WL 1189493 at *7. These factors include surprise to the party against whom the evidence would be offered, ability of the party to cure the surprise, the extent to which allowing the evidence would disrupt the trial, the importance of the evidence, and the nondisclosing party's explanation for its failure to disclose. *Id.*

In this case, the Defendants' motion was prompted by representations at the pretrial conference that Dr. Kotecha would provide evidence as to causation. The Plaintiff states that Dr. Kotecha was disclosed as a witness, but the court has no evidence as to the scope of that disclosure. Although causation evidence is important in this case, as will be more fully discussed below, the Plaintiff has an opinion by another treating physician as to causation. Therefore, in view of the apparent surprise of the evidence close-in-time to the trial date, the fact that there will be other evidence of causation, and the lack of evidence before the court as to the scope of disclosure by the Plaintiff, the court cannot conclude that the Plaintiff has shown that

his failure to comply is substantially justified or harmless under Rule 37. The Motion in Limine as to testimony as to causation by Dr. Kotecha is due to be GRANTED.

### 2. Dr. Do

Dr. Do is also a treating physician of the Plaintiff, but Dr. Do provided an Expert Report and was disclosed as an expert. The Defendants have not moved in limine to exclude all of Dr. Do's testimony, but only to exclude undisclosed opinions. Specifically, the Defendants state that at the pre-trial conference held in this case, counsel for the Plaintiff indicated that Dr. Do would provide approval of the Life Care Plan of Dr. Iversen and/or would provide an opinion as to the Plaintiff's future treatment.

The Defendants point to the Plaintiff's First Amended Designation of Expert Witnesses which states, "Dr. Do examined Plaintiff and has provided a report wherein she states that Plaintiff has suffered spinal injuries as a result of this automobile accident with herniation of cervical lumbar disc. Further opinions may be found in Dr. Do's medical records." (Doc. #101-1). The Defendants point out that this summary does not reference future care. The Defendants also state that none of Dr. Do's medical records regarding the Plaintiff reflect any opinions related to future medical treatment or a Life Care Plan.

The Plaintiff has cited the court to cases in which testimony as to prognosis was considered to fall within a treating physician's testimony. *See, e.g., Odum v. Rayonier, Inc.*, No. Civ A CV204-190, 2007 WL 2002445, at *3 (S.D. Ga. July 5, 2007). That case, however, was decided prior to 2010, and the reporting requirements of Rule 26(a)(2)(C) which apply to treating physicians.

The court has discussed Rule 26(a)(2)(C) disclosure requirements above, and has concluded that a treating physician's testimony is an opinion which must be disclosed unless the opinion was made within the course of treatment. As will be more fully discussed below, there is evidence within the medical records and report of Dr. Do that the Plaintiff will require epidural injections. The disclosures as to Dr. Do's testimony and her medical records, however, do not refer in any way to a Life Care Plan or other types of future treatment, such as anticipated surgeries. This case presents somewhat unusual facts with regard to prognosis in that there is a doctor's report and there are medical records, but that evidence, which was disclosed, does not include an opinion with regard to surgery. Instead, the Plaintiff apparently intends to have the treating physician provide a new opinion, which was not provided during the course of treating the Plaintiff, and was not disclosed, as to future treatment. Under these facts, the court concludes that Dr. Do's opinions as to future surgery are offered as expert testimony. *See Williams v. Mast Biosurgery USA, Inc*., 644 F.3d 1312, 1317-18 (11th Cir. 2011) (reasoning that when a "treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony."). Rule 26(a)(2)(C) disclosure requirements, therefore, apply and were not met with respect to any opinion as to a Life Care Plan or to anticipated surgeries.

As noted earlier, Rule 37 governs when a plaintiff has failed to make disclosures under Rule 26(a). The Plaintiff asserts that the Defendants have claimed no prejudice in allowing Dr. Do to testify as to future treatment, and that the probative value of Dr. Do's testimony is high. The testimony referred to in the pre-trial conference, affirming a Life Care Plan or testifying as to future treatment, which is beyond that which had been disclosed as of the date of the pre-trial conference, was a surprise to the Defendants, and the Plaintiff has not explained why this

information was not previously disclosed. *See Kondragunta*, 2013 WL 1189493 at *7 (listing the factors of surprise to the party against whom the evidence would be offered, ability of the party to cure the surprise, the extent to which allowing the evidence would disrupt the trial, the importance of the evidence, and the nondisclosing party's explanation for its failure to disclose). The court concludes, therefore, that the Motion in Limine is due to be GRANTED as to testimony by Dr. Do as to affirmation of a life care plan or future treatment which is not discussed in her medical records or report.

### B. Rule 702 Motion to Exclude

Dr. Iversen has been offered by the Plaintiff as a retained expert. There is no objection to the disclosures made of Dr. Iversen's testimony under Rule 26. Instead, the Defendants seek to exclude this testimony under Rule 702.

In determining the admissibility of expert testimony under Rule 702, this court must conduct "a rigorous three part inquiry," considering whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998).

**Qualifications**

Under Rule 702, to qualify as an expert, a witness is required to possess the "knowledge, skill, experience, training or education" relevant to the evidence at issue. Fed. R. Evid. 702.

The Defendants do not object to Dr. Iversen's qualifications generally, but instead argue that orthopedics and orthopedic surgery are fields outside of Dr. Iversen's area of expertise, so she is not qualified to offer the opinion that the Plaintiff will need 6 epidural injections, a cervical discectomy and fusion surgery, and a lumbar laminectomy, discectomy, and fusion surgery.

The Plaintiff responds that he is not offering Dr. Iversen as an expert in the various types of surgery. He points to Dr. Iversen's deposition testimony that as a rehabilitation physician she routinely will recommend and perform cervical and lumbar epidural injections. The Plaintiff states that Dr. Iverson reviewed medical records, conducted a physical exam, and made an estimate of the probable care Trinidad would need based on the information and her own experience.

Dr. Iverson is a Doctor of Osteopathy who is employed as a Certified Life Care Planner. She is licensed in the State of Texas and board certified in Physical Medicine and Rehabilitation and has practiced medicine since 2012. Her education, experience, and training qualify her to express an opinion, and to base her life care plan for the Plaintiff on that opinion, consistent with her experience and the medical records that she reviewed. *See M.D.P. v. Middleton*, 925 F. Supp. 2d 1272, 1275–76 (M.D. Ala. 2013) (finding the life care planner was qualified to offer testimony even though the life care planner does not make medical recommendations, but pulls recommendations from medical records, or gets them from treating doctors). The court concludes that she is qualified to provide expert testimony in this case, but will address particular opinions she has offered within the context of reliability analysis.

**Reliability**

The Defendants argue that Dr. Iversen's opinions are not reliable because they are not based on sufficient facts or data, but instead are based on speculation. Specifically, the Defendants argue that Dr. Iversen's testimony is not based on sufficient facts or data because she did not ask the Plaintiff about his history of fibromyalgia or his activities prior to the accident and only spoke to the Plaintiff about the accident, nor did she review a 2010 MRI. The Defendants also state that Dr. Iversen did not review all of the available medical records.

The Defendants also criticize Dr. Iversen's methodology, stating that she used a technique of "drag and drop," boilerplate language in the software to complete sections of the Life Care Plan.

The Defendants offer testimony from John Dahlberg, M.A., who is a life care planner and is critical of Dr. Iversen's methods and says they do not meet industry standards. The Defendant's expert, Dr. Andrew Cordover, has specific criticisms, such as that the vendor surveys include name brand medications, a pediatric practice's prices are used for one projection, and there is no explanation for why vocational evaluation and counseling costs are included even though the Plaintiff currently is employed as a truck driver.

The Plaintiff responds that Dr. Iversen has testified that in preparing the Life Care Plan, she followed the methodology outlined in the textbook for Life Care Planners and peer-reviewed journals. Dr. Iversen explains in her deposition that she collected data, including medical records, her own interview and examination of the Plaintiff, and other records and information. The Plaintiff argues that there is nothing wrong with using forms to complete the Life Care Plan, and that the Defendants' criticisms go to weight.

In determining reliability, the court may ask: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002). Other factors which may be relevant to a determination of reliability are (1) whether they have developed their opinions expressly for the purpose of testifying, (2) whether there is an analytical gap between an accepted premise and a conclusion, (3) the expert's consideration of alternative hypotheses, (4) the degree of care exercised, (5) and whether the field of expertise is known to reach reliable results. *See* Fed.R.Evid. 702.

Standards of scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony, however. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999). For nonscientific expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152.

Dr. Iversen conducted a physical examination of the Plaintiff and reviewed medical records provided to her. One of the medical records she reviewed was from an October 14, 2015 examination of the Plaintiff by Dr. Victoria Do. In her report, Dr. Iversen summarizes Dr. Do's report as stating that Trinidad had an MRI in November of 2014 which showed C6-C7 herniation and another MRI from the same date showed L4-L5 herniation and L5-S1 herniation. Dr. Do recommended a lumbar epidural steroid injection and a referral to a neurologist for an EMG. Dr. Iversen's report states that Dr. Do indicated that Trinidad had suffered spinal injuries as a result of the accident and that Trinidad had significant pain and was a candidate for cervical and

13

lumbar ESI. Dr. Do's medical reports, therefore, as summarized, include evidence regarding causation and epidural injections.

In the Plaintiff's Supplemental Designation of Expert Witnesses, the Plaintiff discloses that Randy Salmons, Ph.D. will provide an opinion as to the Plaintiff's barriers to employment based on his physical limitations and the opinions of the Plaintiff's treating physicians. This expert testimony has not been objected to. Therefore, there will be evidence presented as to an impairment to the Plaintiff's employability.

Dr. Iversen also used vendor pricing for services to estimate costs in her Life Care Plan.

The fact that the Defendants' experts are critical of Dr. Iversen's methods does not mean that her methods lack sufficient reliability to be admissible. *Kuithe v. Gulf Caribe Mar., Inc*., No. CIV.A. 08-0458-WSC, 2009 WL 4694790, at *2 (S.D. Ala. Nov. 25, 2009) (stating that it is "error to conflate admissibility with credibility, as by considering the relative weight of competing experts and their opinions.").

The court concludes based on Dr. Iversen's reliance on medical records, her own examination of the Plaintiff as a certified physician, her reliance on other sources of information, her use of an established methodology, and the existence of facts in other evidence which support her opinions means that the majority of her opinions, such as her opinions regarding future epidural injections and employment impairment, is sufficiently reliable to be considered by the jury, and that the Defendant's objections go to weight. *Deramus v. Saia Motor Freight Line, LLC*, No. 2:08-CV-23-MEF, 2009 WL 1664084, at *2 (M.D. Ala. June 15, 2009) (finding that where a proposed life care plan was based on a review of Plaintiff's medical records, depositions taken from Plaintiff's physicians, and numerous meetings with Plaintiff any objection

to the opinions must go to the weight the jury should give to her testimony rather than its admissibility); *In re Knudsen*, No. CIV.A. 08-00505-CG-B, 2010 WL 1994906, at *8 (S.D. Ala. May 17, 2010) (arguments that the life care planner did not consider various facts and arguments in making her opinions or whether she contacted enough "sitter services" or "care facilities" in calculating an average price for those services concern the weight of the evidence rather than the reliability of the expert's application of her methodology).

Dr. Iversen's Life Care plan also includes cost projections for future surgeries, however, which presents a different reliability issue. Although there is evidence as to epidural injections in Dr. Do's report, there is no recommendation from any treating physician that the Plaintiff have surgery. At the pre-trial conference, when Plaintiff's counsel was asked specifically about the basis for a Life Care Plan which includes future surgery, Plaintiff's counsel referred to testimony by Dr. Do. For the reasons set forth above, any opinion testimony by Dr. Do which was not disclosed pursuant to Rule 26 is due to be excluded, and no testimony as to recommended surgery was disclosed previously.

In her deposition, Dr. Iversen was asked whether any treating physician recommended that the Plaintiff have a cervical fusion and she answered, "No, they've started now, now he's finally seen an orthopedist and now they're recommending nerve blocks and if that doesn't work, you know, I'm sure they'll go on to the next step. I don't know what the surgeon is going to recommend." (Doc. #47-1 p. 175:17-21).

Dr. Iversen has stated in her deposition that based on her training and her experience with other patients, she can offer the opinion that the Plaintiff will require surgery in the future. (Doc. #47-1 at p. 175:10-11),

Simply because an expert may be qualified by experience does not mean that experience "is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004).

Dr. Iversen's review of medical records revealed no recommendation that the Plaintiff have surgery of any kind, and she stated in her deposition that she did not know what a surgeon would recommend. Because Dr. Iverson is not an orthopedist, the court agrees that an opinion that the Plaintiff requires surgery for his condition, even though no treating physician has recommended surgery, is not based on sufficiently reliable evidence, but is instead based on speculation. The court concludes, therefore, that Dr. Iversen will not be allowed to testify about future medical care for which there is no recommendation in the Plaintiff's medical records or a treating physician, specifically, future surgeries.

**Helpfulness to the jury**

The Defendants contend that Dr. Iversen's testimony will not be helpful to the jury, specifically her testimony as to future treatment, because none of the Plaintiff's treating physicians have recommended that he receive the treatment Dr. Iversen recommends. The Defendants argue that the Plaintiff's recovery of damages requires a showing that the expenses are reasonably certain to be incurred as a result of the plaintiff's current physical injury.

The court agrees and finds that on the alternative basis of lack of helpfulness to the jury that an opinion by Dr. Iversen that the Plaintiff will require surgery in the future and cost projections based on future surgeries are due to be excluded.

### IV. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion in Limine Excluding Undisclosed Opinions of Dr. Nilesh Kotecha (Doc. #99) is GRANTED to the extent that Dr. Nilesh Kotecha may not offer an opinion as to causation in this case.

2. The Motion in Limine Excluding Undisclosed Opinions of Dr. Victoria Do (Doc. #101) is GRANTED to the extent that Dr. Do may not offer an opinion which affirms the Life Care Plan in this case or which offers an opinion as to future surgeries of the Plaintiff.

3. The Motion to Preclude Testimony of Plaintiff's Expert Sasha R. Iversen, D.O. (Doc. #47) is GRANTED in part and DENIED in part. Dr. Iversen will be allowed to testify and to offer opinion and a Life Care Plan, but her opinions and Life Care plan will not include an opinion as to the need for or the costs of future surgeries of the Plaintiff.

Done this 23rd day of September, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT COURT